IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| FRANCES SCOTT CLARK, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | No. 09 C 2784 |
| PINNACLE CREDIT SERVICES, LLC, et al., | ) ) ) ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant MetaBank's (MetaBank), Defendant Card Acquisition, LLC's (Card Acquisition), Defendant Pinnacle Credit Services, LLC's (Pinnacle), and Defendant FMS Investment Corp.'s (FMS) motions to dismiss. For the reasons stated below, we deny the motions to dismiss.

## BACKGROUND

Plaintiff Frances Scott Clark (Clark) alleges that Pinnacle is a company that purchases or claims to purchase charged-off consumer debts, and then collects or attempts to collect the purchased debt from consumers using the mail and telephone system. Clark alleges that FMS is a collection agent that uses the mail and telephone

1

system to collect debts originally owed to others.  Clark contends that Pinnacle and FMS are debt collectors as defined under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*.

Clark also alleges that Card Acquisition devised and implemented a refinancing program (Refinancing Program) marketed to owners of charged-off debts such as Pinnacle.  More specifically, Clark contends that on Card Acquisition's website (Website), Card Acquisition claims to provide the owners of charged-off debts "'alternative recovery strategies'" by either purchasing charged-off accounts for cash or evaluating charged-off accounts and arranging to transfer certain amounts to the Affirm Credit Card (Affirm Card).  (SA Compl. Par. 24).  Clark claims that the Website indicates that Card Acquisition's goal is to maximize overall recovery rates and complement existing collection strategies.  In addition, Clark alleges that on the Website, Card Acquisition offers to either acquire charged-off accounts for cash as the accounts are converted to credit cards, or to allow the owners of charged-off debts to "participate in the cash flow from the credit cards as these accounts mature and generate cash flow."  (SA Compl. Par. 24).  According to Clark, the Website also states that Card Acquisition provides "'the consumer with a positive way to resolve prior debts though the Affirm Credit Card Program where the debtor can transfer his or her non-performing account balance to a newly issued credit card.'"  (SA Compl. Par. 23).  Clark alleges that the Website indicates that "'Affirm Card' is a trademark of Card Acquisition."  (SA Compl. Par. 23).  In addition, Clark alleges that MetaBank is a company that "regularly collects or attempts to collect, directly or

indirectly, consumer debts originally owed or due or asserted to be owed or due to others, through the [R]efinancing [P]rogram." (SA Compl. Par 17). Clark states that MetaBank and Card Acquisition use the mail and telephone system in connection with the Refinancing Program. According to Clark, MetaBank is the issuer of the Affirm Card. Clark contends that, with respect to her debt, MetaBank and Card Acquisition are not creditors, but are instead debt collectors under the FDCPA.

Clark alleges that the Refinancing Program targeted consumers whose debt had been purchased by Pinnacle. Clark claims that "most or all of the debts that were the subject of the refinancing program were beyond the applicable statute of limitations, unprovable, barred by the statute of frauds, or otherwise legally unenforceable." (SA Compl. Par. 32). Clark states that, in targeting consumers whose debt has been purchased by Pinnacle, FMS sent details of the Refinancing Program and the terms of the Affirm Card (Mailing) through the mail on behalf of Pinnacle and MetaBank. Clark alleges that each of the Defendants was aware of and approved the contents of the Mailing. Clark also alleges that the Mailing instructed debtors to call a number assigned to FMS to apply for the Affirm Card and discuss a settlement amount relating to the debt. (Settlement Amount). According to Clark, under the terms of the Refinancing Program, the Settlement Amount negotiated between FMS and a debtor became the debtor's initial line of credit and that such amount was transferred to the debtor's new Affirm Card.

Clark states that she received the Mailing in connection with an alleged debt that she had incurred for personal, family, or household purposes on a credit card

issued by HSBC or its subsidiary, Orchard Bank, which was purportedly in default. Clark alleges that the Mailing was not in compliance with the FDCPA. Clark claims that "if consumers were given a complete disclosure of the terms of the credit, they might find and prefer alternative products." (SA Compl. Par. 67). Clark also contends that "the failure to disclose [the Retained Amount] was means to attract consumers who would otherwise be unreceptive to the [Refinancing Program]." (SA Compl. Par. 67). Clark alleges that Defendants violated the FDCPA's requirements that no false, misleading, deceptive, or unfair means be used to collect any consumer debt, found at 15 U.S.C. § 1692e and 15 U.S.C. § 1692f. In support of her FDCPA claim, Clark contends that Defendants violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, which regulates the advertising of credit products, and Regulation Z (Reg Z), 12 C.F.R. § 226.1 *et seq.*, TILA's implementing regulation. *See* 12 C.F.R. pt. 226.1(a) (2000)(stating that "Regulation Z, is issued by the Board of Governors of the Federal Reserve System to implement the federal Truth in Lending Act, which is contained in title I of the Consumer Credit Protection Act, as amended (15 U.S.C. [§] 1601 *et seq.*)"). Defendants have each filed a motion to dismiss.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations

contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556); *Hecker v. Deere & Co.*, 569 F.3d 708, 710-11 (7th Cir. 2009).

## DISCUSSION

I. Applicability of the FDCPA to MetaBank

MetaBank argues that the FDCPA does not apply to it. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e)(). Thus, the FDCPA applies only to debt collectors, and does not apply to creditors. *Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009). MetaBank has argued in its motion to dismiss that Clark's complaint does not sufficiently allege that MetaBank

is a "debt collector" under the FDCPA, and that therefore Clark's FDCPA claim against MetaBank should be dismissed.

The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . The term does not include . . . (F) any person collecting or attempting to collect any debt owed or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6). In contrast, the FDCPA defines a creditor as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Under the FDCPA, "these two categories-debt collectors and creditors-are mutually exclusive." *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 536 (7th Cir. 2003)(noting that "the Act treats assignees as debt collectors if the debt sought to be collected was in default *when acquired by the assignee*, and as creditors if it was not)(emphasis added)(citations omitted)). In determining whether a defendant is a debt collector or a creditor under the FDCPA, the court's sole inquiry is "whether the debt was in default *at the time it was acquired*" by the defendant. *Ruth* 577 F.3d at 796-97 (emphasis added)(citing *McKinney v. Cadleway Properties,* 548 F.3d 496, 501 (7th

Cir. 2008), and *Schlosser,* 323 F.3d at 538-39). At this stage of the proceedings, the court accepts as true all of the allegations contained in a complaint, except for legal conclusions, for the purposes of ruling on a 12(b)(6) motion to dismiss. Clark alleges that all four Defendants were "acting in concert" and "devised an implemented a refinancing program for the purpose of collecting delinquent debts." (SA Compl. Par. 29). Clark also alleges that MetaBank "regularly collects or attempts to collect, directly or indirectly, consumer debts originally owed or due or asserted to be owed or due to others, through the Refinancing Program." (SA Compl. Par. 17). In addition, Clark alleges that with respect to the Refinancing Program, MetaBank is a "debt collector" and not a "creditor" under the FDCPA. (SA Compl. Par. 19). Further, Clark alleges that MetaBank co-authored and approved the Mailing sent to Clark. Thus, Clark has alleged sufficient facts relating to the Refinancing Program and the Mailing to defeat MetaBank's motion to dismiss based on MetaBank's argument that it is not a debt collector under the FDCPA. At the summary judgment stage Clark will need to point to sufficient evidence to show that MetaBank is a debt collector with respect to the Financing Program.

II. Violation of the FDCPA based on Alleged Violations of TILA and Reg Z

Clark claims that the Mailing violated the FDCPA because it did not disclose the percentage of the Settlement Amount that MetaBank and Card Acquisition retained (Retained Amount). Clark contends that the Retained Amount is "actually the cost of opening a new credit account" since it is not disbursed to Pinnacle to

7

satisfy Clark's debt. (SA Compl. Par. 46-47). According to Clark, since the Retained Amount was not disclosed, the contents of the Mailing were "materially false, and omitted material terms necessary to a full understanding of the credit product being advertised." (SA Compl. Par. 43). Under the FDCPA, a debt collector is prohibited from using "any false, deceptive, or misleading representation or means," or "unfair or unconscionable means" to collect debt. 15 U.S.C. §§ 1692e, 1692f. Alleged violations of the FDCPA are judged using the objective standard of an unsophisticated consumer. *See Ruth,* 577 F.3d at 799-800, 801 n.5 (stating that "[i]f a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA-even if it is false in some technical sense," and that "[t]he unsophisticated debtor is uninformed, naive, [and] trusting but is also assumed to possess rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences")(citations omitted)(internal quotations omitted). Although Clark has brought her claim under the FDCPA, Clark predicates her FDCPA claim on alleged violations of TILA and Reg Z. Clark argues that under TILA and Reg Z, Defendants were required to disclose the Retained Amount, and that accordingly, Defendants' failure to disclose the Retained Amount constitutes a violation of the FDCPA's prohibition on making false, deceptive or misleading statements during an attempt to collect debt. (Pl. Resp. 6-7).

A. Applicability of TILA and Reg Z

Card Acquisition, Pinnacle, and FMS argue that Clark has not sufficiently

8

alleged that they are creditors, and that since they are not creditors, they are not bound by the disclosure requirements of TILA and Reg Z. In her second amended complaint, Clark alleges that Defendants violated TILA and Reg Z by failing to make disclosures required under 15 U.S.C. § 1637(a), 15 U.S.C. § 1637(c), 12 C.F.R. § 226.5a(b), and 12 C.F.R. § 226.6(b). Whether or not Card Acquisition, Pinnacle, and FMS are creditors and/or are subject to TILA requirements cannot be resolved at the motion to dismiss stage based upon the allegations in the complaint. Clark has alleged sufficient facts to defeat a motion to dismiss. However, at the summary judgment stage, Clark will need to point to sufficient evidence to support her claim. Defendants also argue that Clark does not have standing to pursue a TILA claim. However, Clark claims that she is not pursuing a TILA claim, but is pursuing an FDCPA claim against the Defendants by alleging violations under TILA.

B.  Alleged Violations of TILA and Reg Z

Defendants argue that even if MetaBank was subject to the FDCPA and Clark could pursue a claim under the FDCPA based on alleged violations of TILA and Reg Z, Clark has not alleged facts showing that Defendants violated TILA or Reg Z. The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). (SA Compl. Par 50-58). Thus, TILA and Reg Z require creditors to clearly and

9

accurately disclose the cost of credit, including all finance charges. *See, e.g.*, 15 U.S.C. § 1637 (listing required disclosures under open end consumer credit plans); 15 U.S.C. § 1632 (specifying the form of disclosure with respect to annual percentage rates and finance charges). The term "finance charge" is defined under TILA as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Both TILA and Reg Z specify that the finance charge "does not include charges of a type payable in a comparable cash transaction." *Id.*, 12 C.F.R. § 226.4(a). A prepaid finance charge is defined under Reg Z as "any finance charge paid separately in cash or by check before or at consummation of a transaction or withheld from the proceeds of credit at any time." 12 C.F.R. § 226.2(a)(23). The term "credit" is defined under TILA as "the right granted by a creditor to a consumer to defer payment of debt or to incur debt." 15 U.S.C. § 1602(e). At this stage of the proceedings, Clark has alleged sufficient facts relating to her claim to defeat Defendants' motion to dismiss. At the summary judgment stage, Clark will need to point to sufficient evidence to support her claim.

III. Materiality of Alleged False Statement

Defendants have also argued that the alleged false statement was not material. A false or misleading statement made during an attempt to collect a debt does not violate the FDCPA if the statement is immaterial to the consumer. *Hahn v. Triumph*

*P'ship LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009). Clark claims that "the failure to accurately disclose the prepaid finance charge prevents the consumer from comparing the [Refinancing Program] with other credit products." (SA Compl. Par. 67). Clark claims that "if consumers were given a complete disclosure of the terms of the credit, they might find and prefer alternative products." (SA Compl. Par. 67). Clark also contends that "the failure to disclose [the Retained Amount] was means to attract consumers who would otherwise be unreceptive to the [Refinancing Program]." (SA Compl. Par. 67). At this stage of the proceedings, Clark has made sufficient allegations to defeat the Defendants' materiality argument. We once again emphasize that at the summary judgment stage, Clark will need to point to sufficient evidence to support her claim.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motions to dismiss.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 24, 2010